**SO ORDERED.**

**SIGNED this 23 day of July, 2014.**



_____
**Stephani W. Humrickhouse
United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

| | |
|---|---|
| IN RE: | CASE NO. |
| BARBETTA, LLC | 11-04370-8-SWH |
| DEBTOR | CHAPTER 11 |

ORDER REGARDING SHOW CAUSE ORDER
REQUIRING PAYMENT OF QUARTERLY FEES

The matter before the court in this chapter 11 case is the order directing the debtor, Barbetta, LLC, to appear and show cause why this case should not be dismissed, converted to chapter 7 or other sanctions imposed for the failure to pay quarterly fees. A hearing took place in Raleigh, North Carolina, on June 3, 2014.

The debtor filed a petition for relief under chapter 11 of the Bankruptcy Code on June 6, 2011. The debtor's chapter 11 plan was confirmed on February 8, 2012, and a final decree was entered on June 4, 2012, closing the debtor's case.

Thereafter, on January 31, 2013, Deborah B. Cook and Franklin Dwight Cook ("plaintiffs") filed a complaint in the Superior Court of Alamance County, North Carolina, asserting claims against the debtor related to an alleged injury sustained by Mrs. Cook on property owned by the

debtor (the "State Action"). According to Mrs. Cook, the injury occurred on or about February 1, 2010, thus, prior to the filing of debtor's bankruptcy petition.

The plaintiffs' claims were not listed in the debtor's schedules because, at the time of the debtor's bankruptcy petition, the debtor was not aware of them. Likewise, the plaintiffs were not aware of the debtor's bankruptcy case during its pendency. One of the debtor's assets in its bankruptcy case was an insurance policy which provides coverage for the claims asserted by the plaintiffs in the State Action. The debtor's insurance carrier is currently defending the State Action and debtor's counsel has represented that the plaintiffs have agreed to limit their recovery, if any, solely to any insurance policy in effect at the time of the alleged injury, and will waive any right to recovery from the debtor directly.

The issue of whether the plaintiffs could pursue claims against the debtor and/or its insurance carrier for causes of action which arose pre-petition but were not addressed in the debtor's bankruptcy case arose in the State Action. Accordingly, the court in the State Action directed the parties to obtain direction from this court regarding whether the plaintiffs' claims were discharged by the debtor's confirmed chapter 11 plan, and thus, on December 12, 2013, the debtor filed a motion to reopen its bankruptcy case for that purpose. An order granting the debtor's motion to reopen was entered on January 8, 2014.[1] On May 22, 2014, upon the motion of the Bankruptcy Administrator, this court issued a show cause order against the debtor due to its failure to pay quarterly fees required by 28 U.S.C. § 1930(a)(6).

---

[1] As of the date of this order, neither the debtor nor the plaintiffs have initiated an adversary proceeding to determine the dischargeability of the plaintiffs' claims.

The debtor argues that it should not be required to pay quarterly fees because it did not voluntarily reopen its bankruptcy case, but was instead forced to reopen it at the direction of the State Court. In addition, the debtor argues that if the payment of the quarterly fees is required, such payment should be the responsibility of the plaintiffs since they are the parties who initiated the State Action. In response, it is the Bankruptcy Administrator's position that once a case is reopened, the debtor is obligated to pay quarterly fees, regardless of the reason why the case was reopened.

At the conclusion of the June 3, 2014, hearing, the court allowed the parties twenty-one days to submit post-hearing briefs on the issue. The Bankruptcy Administrator filed a brief in support of its position on June 25, 2014.

## DISCUSSION

Initially, it must be noted that a determination of whether the plaintiffs' claims were discharged is a core proceeding and this court has jurisdiction to enter a final judgment in the matter. 28 U.S.C. § 157(b)(2)(I). See e.g., U.S. v. Wilson, 974 F.2d 514, 516 (4th Cir. 1992). Although the State Court possesses concurrent jurisdiction with this court in determining whether the plaintiffs' unscheduled claims were discharged, see In re Toussaint, 259 B.R. 96, 100 (Bankr. E.D.N.C. 2000), the State Court has expressly declined to exercise that jurisdiction and has instead directed the parties to seek relief in this court.

The debtor bases its argument that it should not be required to pay quarterly fees on the fact that it did not voluntarily pursue the jurisdiction of this court, but was forced here by the State Court and the actions of the plaintiffs. That argument can be swiftly and easily dispensed with by the court. Debtors who are brought before this court by way of involuntary chapter 11 petitions are similarly not here on their own volition, but have been "forced" to litigate in this forum. There can

be no rational argument that such involuntary debtors are not required to pay quarterly fees.  See In re Flatbush Assocs., 198 B.R. 75, 76 (Bankr. S.D.N.Y. 1996) (refusing to confirm the plan of an involuntary chapter 11 debtor based upon the debtor's failure to pay quarterly fees it owed to the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6)).  The voluntary nature of the debtor's appearance has no bearing on the requirement to pay quarterly fees.

Although the debtor has made no additional arguments regarding its opposition to the payment of quarterly fees, the court will review the relevant statutory and caselaw basis for the imposition of quarterly fees and evaluate their applicability to the case at bar.  The court first turns to the express language of 28 U.S.C. § 1930(a)(6), the statute imposing the requirement to pay quarterly fees.  The amount of quarterly fees required to be paid by a chapter 11 debtor increases on a sliding scale depending on the total disbursements made by a debtor during a given quarter:

> In addition to the filing fee paid to the clerk, a quarterly fee shall be paid to the United States trustee, for deposit in the Treasury, in each case under chapter 11 of title 11 [11 USCS §§ 1101 et seq.] for each quarter (including any fraction thereof) until the case is converted or dismissed, whichever occurs first. The fee shall be $325 for each quarter in which disbursements total less than $15,000; $650 for each quarter in which disbursements total $15,000 or more but less than $75,000; $975 for each quarter in which disbursements total $75,000 or more but less than $150,000 . . . .

28 U.S.C. § 1930(a)(6).[2]  It is not evident from the express language of § 1930(a)(6) that the payment of quarterly fees is required in a reopened chapter 11 case which was closed after the entry of a final decree.  Furthermore, no cases specifically addressing the issue could be found.  However, an analysis of the purpose of § 1930(a)(6), along with relevant case law and provisions of the Bankruptcy Code itself leads this court to conclude that the debtor is required to pay its quarterly fees in this reopened case.

Prior to 1996, quarterly fees were imposed upon a debtor only until the earlier of plan confirmation, conversion or dismissal.  On January 26, 1996, § 1930(a)(6) was amended to extend the requirement to pay quarterly fees, post-confirmation:

> In addition to the filing fee paid to the clerk, a quarterly fee shall be paid to the United States trustee, for deposit in the Treasury, in each case under chapter 11 of title 11 for each quarter (including any fraction thereof) until the case is converted or dismissed, whichever occurs first.

28 U.S.C. § 1930(a)(6).  The 1996 amendment removed confirmation of the plan as a basis for the cessation of payment of quarterly fees.  Balanced Budget Down Payment Act, I, Pub. L. No. 104-99,

---

[2] As noted by this court in In re WM Six Forks, LLC, 502 B.R. 88 (Bankr. E.D.N.C. 2013):

> The assessment of quarterly fees in the three judicial districts in North Carolina, none of which are part of the United States Trustee Program as defined in 28 U.S.C. § 581, are governed by 28 U.S.C. 1930(a)(7), which provides that "the Judicial Conference of the United States may require the debtor in a case under chapter 11 of title 11 to pay fees equal to those imposed by paragraph (6) of this subsection."

WM Six Forks, 502 B.R. at 91 n.2 (quoting 28 U.S.C. § 1930(a)(7)).  Thus, quarterly fees are assessable in the Bankruptcy Administrator districts under the same guidelines imposed upon debtors in the U.S. Trustee districts.

§ 211, 110 Stat. 26, 37-38 (1996). The purpose of the amendment was to increase the revenue flowing to the United States Trustee Program.

> Before the 1996 amendment, which added post-confirmation fee assessments, the U.S. trustee's office was faced with declining filings and thus a decline in fees, although a significant number of chapter 11 cases remained open post-confirmation. To correct this, Congress extended the period of time in which fees could be assessed, to the post-confirmation period. The legislative history is clear on this point. Congress intended a fee structure that paid for the U.S. trustee program and only the U.S. trustee program.

In re Danny's Mkts., Inc., 239 B.R. 342, 346-47 (Bankr. E.D. Mich. 1999) (citations omitted), *rev'd on other grounds by* 266 F.3d 523 (6th Cir. 2001).  Indeed, 28 U.S.C. § 589a, the statute detailing how the United States Trustee Program is funded, provides that "100 percent of the fees collected under section 1930(a)(6)" shall be used "[f]or the purpose of recovering the cost of services of the United States Trustee System."  28 U.S.C. § 589a(b)(6).

In addition, courts interpreting the term "disbursements," which is not defined by the Bankruptcy Code, have given the term a broad interpretation in order to fulfill the legislative intent to increase the amount of quarterly fees paid to the U.S. Trustee.  See Robiner v. Danny's Mkts., Inc. (In re Danny's Mkts., Inc.), 266 F.3d 523, 526 (6th Cir. 2001) (holding that all payments to third parties directly attributable to the existence of the bankruptcy proceeding, regardless of the source of the payments, are "disbursements"); Walton v. Jamko, Inc. (In re Jamko, Inc.), 240 F.3d 1312, 1316 (11th Cir.2001) (holding that "disbursements" include all post-confirmation payments, not just payments made pursuant to a confirmed chapter 11 plan); Tighe v. Celebrity Home Entm't, Inc. (In re Celebrity Home Entm't, Inc.), 210 F.3d 995, 998 (9th Cir. 2000) (same); In re WM Six Forks, LLC, 502 B.R. at 92-94 (Bankr. E.D.N.C. 2013) (holding that credit bid by a secured lender for purchase of its collateral in satisfaction of lender's claim fell within the term "disbursements"); In

re Huff, 270 B.R. 649, 653 (Bankr. W.D. Va. 2001) (holding that upon the refinancing of an existing debt, proceeds from the new loan used to retire the existing debt fell under the term "disbursement" for the purpose of calculating quarterly fees). The reasoning often cited by these cases for implementing a broad interpretation is the policy underlying § 1930(a)(6), which was to create revenue for the United States Trustee Program. See Danny's Mkst, 266 F.3d at 526; Jamko 240 F.3d at 1315-16; Celebrity Home, 210 F.3d. at 998; WM Six Forks, 502 B.R. at 93; Huff, 270 B.R. at 653. The quarterly fees collected under § 1930(a)(6) are intended to be a "'revenue-generating mechanism' operating to fund the United States Trustee Program by 'imposing the costs . . . on the users of the bankruptcy system, not the taxpayer." WM Six Forks, 502 B.R. at 93 (quoting Jamko, 240 F.3d at 1315). The payment of quarterly fees has even been characterized "as a type of user tax on those who benefit the most from the program." Jamko 240 F.3d at 1315.

The same policy has been noted by courts which refused to close debtors' cases *nunc pro tunc* in order to allow debtors to avoid liability for unpaid quarterly fees. See Schwartz v. Aquatic Dev. Group, Inc. (In re Aquatic Dev. Group, Inc.), 352 F.3d 671, 674 (2d Cir. 2003) (holding that the bankruptcy court abused its discretion when it closed a debtor's chapter 11 case *nunc pro tunc* and allowed the debtor to avoid approximately $110,000 in unpaid quarterly fees which accrued over a three year period). See also In re Wren, 315 B.R. 921, 924 (Bankr. M.D. Ga. 2004). In Wren, the Bankruptcy Court was unwilling to grant the debtors retroactive relief upon the closure of their reopened chapter 11 case. 315 B.R. at 923. There, the chapter 11 debtors' case was closed on October 28, 1994, after an entry of final decree, but was later reopened more than seven years later on February 27, 2002, in order to address an adversary proceeding. Id. at 922. The debtors argued that since their case was reopened only to address the adversary proceeding, it was not necessary

for them to pay quarterly fees. The United States Trustee filed a motion to convert the case and the debtors then sought to have their case closed, *nunc pro tunc*, in order to avoid liability to the U.S. Trustee. The court denied the debtors' motion and required them to pay the quarterly fees on the grounds that the debtors had not demonstrated that they were entitled to retroactive relief. Id. at 923. Although the court expressly "[did] not reach the issue of whether the Debtors are in fact required to . . . pay U.S. Trustee quarterly fees after the case is closed if it is re-opened to allow the Debtors to file an adversary proceeding," the reasoning of the court is still instructive. Id. at 324. There, the court noted that:

> Withholding Trustee's fees does not further the Bankruptcy Code. "These fees bear no relation to particular services performed by the Trustee. Indeed, the legislative history of the amendment to § 1930 makes it clear that the fees are used to offset other expenditures in the federal budget and that the amendment was added to increase the revenue raised from these fees."

Wren, 315 B.R. at 924 (quoting Aquatic, 352 F.3d at 674 n.2). Therefore, it is the use of the system that invokes the fee, not the specific duties imposed upon the U.S. Trustee or Bankruptcy Administrator in a particular case.

Reopening of a case, and thus the use of the bankruptcy system again by a debtor, is contemplated by the Code because the closing of a case does not necessarily resolve all issues arising from a confirmed chapter 11 plan. Pursuant to § 350 of the Bankruptcy Code, "[a] case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. § 350. The Advisory Committee's Notes to the 1991 amendments to Bankruptcy Rule 3022 also make clear that:

> The court should not keep the case open only because of the possibility that the court's jurisdiction may be invoked in the future. A final decree closing the case after the estate is fully administered

> does not deprive the court of jurisdiction to enforce or interpret its own orders and does not prevent the court from reopening the case for cause pursuant to § 350(b) of the Code.

Fed. R. Bankr. P. 3022 advisory committee's notes. Upon closure of a debtor's chapter 11 case, the debtor is relieved of its duty to pay quarterly fees. Aquatic, 352 F.3d at 675 n.4. However, the bankruptcy court retains the jurisdiction to reopen the case for cause, such as here, to determine the dischargeability of the plaintiffs' claims. Upon the reopening of the case, the debtor is again responsible for the payment of quarterly fees because, pursuant to § 1930(a)(6), quarterly fees are required "in each case under chapter 11," 28 U.S.C. § 1930(a)(6), and a reopened case is, in fact, a case under Chapter 11.

Finally, upon the reopening of a Chapter 11 case, the case is again subject to conversion or dismissal for cause. See 11 U.S.C. § 1112(b)(1). One of the grounds for conversion or dismissal is the debtor's "failure to pay any fees or charges required under chapter 123 of title 28." 11 U.S.C. § 1112(b)(4)(K). Although the express language of § 1930(a)(6) never identifies closure of a case as an event which terminates the requirement to pay quarterly fees, courts interpreting § 1930(a)(6) have read this requirement into the Code, reasoning that "[t]he logical conclusion is that when a case is closed, the obligation to pay quarterly fees terminates because the possibility of conversion or dismissal no longer exists. There is no ambiguity here, Congress simply did not state the obvious." In re McLean Square Assocs., 201 B.R. 436, 443 (Bankr. E.D. Va. 1996). See also Schwartz v. Aquatic Dev. Group, Inc. (In re Aquatic Dev. Group, Inc.), 352 F.3d 671, 675 n.4 (2d Cir. 2003) ("Although the statute does not specifically state that the closing of a bankruptcy case cuts off the accrual of the Trustee's fees, courts interpreting the statute have uniformly held that closure of a case after entry of a final decree is also an event that terminates quarterly fees because the existence of

9

a case is a statutory precondition to the assessment of such fees." (internal quotation marks omitted)). Therefore, a reopened case is again a case in existence under Chapter 11 and subject to conversion or dismissal for failure to pay quarterly fees. If a case is subject to dismissal for failure to pay quarterly fees, it follows that such fees are due.

Here, the debtor has reopened its chapter 11 case for the purpose of having the bankruptcy court determine the dischargeability of the plaintiffs' claims. Although the debtor wisely sought and obtained an entry of a final decree upon substantive consummation of its plan, thus closing its case, upon reopening the case, it again became a case under chapter 11 subject to quarterly fees. The fact that the Bankruptcy Administrator may not have significant involvement in the administration of the case at this juncture is not relevant since the assessment of quarterly fees is not contingent upon nor related to the services performed by the Bankruptcy Administrator. Accordingly, the debtor shall remit to the Bankruptcy Administrator's office its unpaid quarterly fees within twenty (20) days of entry of this order or be subject to conversion or dismissal; failing which the case will be dismissed.

**SO ORDERED.**

**END OF DOCUMENT**